UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARCHIE MAXWELL,

                Plaintiff,

                                         **Hon. Hugh B. Scott**

                                         **16CV244V**

         v.

                                         **Report**
                                         **&**
                                         **Recommendation**

UNITED STATES OF AMERICA,

                Defendant.

---

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 19). The instant matter before the Court is a motion of defendant (Docket No. 18) for summary judgment[1]. Following dispositive referral, responses to this motion were due by April 3, 2018, with reply due by April 10, 2018 (Docket No. 20). Plaintiff submitted his response (Docket No. 21, Pl. Memo. of Law), and defendant quickly replied (Docket No. 22, Def. Reply Memo., filed April 6, 2018). This motion was deemed submitted (without oral argument) as of April 6, 2018.

This case is parallel to another Federal Tort Claims Act case pending in this District, Harris v. United States, No. 16CV247W, alleging a similar medical malpractice claim as asserted

---

[1] Initially in support of its motion, defendant submitted its Statement of Undisputed Facts; an Appendix to that Statement (with exhibits); the Declaration of counsel; the Declaration of Dr. Alan Lesse; Deposition Transcript excerpts from plaintiff's deposition; and Memorandum of Law, Docket No. 18.

here. In Harris, defendant United States filed a similar summary judgment motion (No. 16CV247, Docket No. 16), now pending before Judge Elizabeth Wolford (see No. l16CV247, Docket No 19).

## BACKGROUND

This is a Federal Tort Claims Act action against the United States by plaintiff, a veteran. Plaintiff alleges that the Veterans Affairs Medical Center in Buffalo, New York, reused insulin pens, exposing plaintiff to HIV or Hepatitis C (Docket No. 2, Am. Compl.; see Docket No. 1, Compl.; see also Docket No. 18, Def. Statement ¶¶ 73-78). He claims that between October 2010 and November 1, 2012, defendant negligently administered insulin pens by reusing unmarked pens or not using labeled pens for plaintiff or other patients. On February 8, 2013, plaintiff alleges that testing revealed that he contracted Hepatitis **B** (Docket No. 2, Am. Compl. ¶ 17). He claims that "as a result of that improper re-use of insulin pens and cartridges, plaintiff was actually or probably exposed to HIV and/or Hepatitis C" (id. ¶ 18). Plaintiff admits, however, that he tested negative for HIV or Hepatitis C infection (id. ¶ 21). Plaintiff alleges that, due to defendant's negligence, he feared possibly contracting HIV or Hepatitis C (id.). Plaintiff is suing for $50,000 in compensatory damages and recovery of other costs (id. at unnumbered page 8, "WHEREFORE" Clause; see also Docket No. 18, Def. Statement ¶ 5).

Defendant answered (Docket No. 5). Fact discovery (see also Docket No. 17, Scheduling Order) closed on December 17, 2017, and initial disclosure of experts was to occur by September 18, 2017 (Docket No. 18, Def. Statement ¶ 79). Defendant contends that plaintiff to date has not disclosed any expert witnesses he intends to call (id.).

In its motion for summary judgment (Docket No. 18), defendant states that plaintiff was a patient at the Veterans Affairs Medical Center from December 29, 2011, to January 9, 2012, and from August 9, 2012, to August 14, 2012 (id., Def. Statement ¶¶ 1, 40, 41). Plaintiff was treated there for diabetes (id. ¶¶ 38-39). While an inpatient in 2011 and 2012, plaintiff received sixteen injections from insulin pen (id. ¶ 42).

Prior to 2010, the Veterans Affairs Medical Center had a practice of administering multi-dose vials of insulin to patients in vials labeled with the patient's name (id. ¶ 12). In October 2010, the Veterans Affairs Medical Center changed its procedure by switching to insulin pens (id. ¶ 13). These pens had the potential for blood back flow into the pen cartridge exposing a patient to blood borne diseases, such as HIV, Hepatitis B or C (id. ¶ 14). Supplies of unlabeled insulin pens were placed in hospital wards rather than issued through the hospital pharmacy (id. ¶ 16). Nurses were instructed to label insulin pens with the name of specific patients (id. ¶ 17). Of the 37 nurses who administered insulin pens at Veterans Affairs Medical Center after 2010, a majority of them labeled or used labeled pens, while six of these nurses reported using unlabeled pens on multiple patients (id. ¶¶ 18, 19). Defendant also notes later corrective actions taken after finding insulin pen misuse (id. at page 5 n.1). The Department of Veterans Affairs Inspector General Office of Healthcare Inspections ("Inspector General"), however, found no documented instances of infection from this misuse of insulin pens (id. ¶ 21; Docket No. 2, Am. Compl., Ex. D, "Inappropriate Use of Insulin Pens VA Western New York Healthcare System, Buffalo, New York," Report No. 13-01320-200 at 3, hereinafter "IG Report").

The Veterans Affairs Medical Center contacted 716 patients or former patients who had inpatient stays about the use of insulin pens (Docket No. 18, Def. Statement ¶¶ 22-23). Of those

3

identified patients, 542 were still living and of these 395 underwent testing, with 84 of those tested positive on initial screening for having a history of HIV, Hepatitis B or C (id. ¶¶ 24-26). None of the patients who died of the 716 died from blood borne pathogens (Docket No. 2, Am. Compl., Ex. D, IG Report at 16). Of those 84 patients who tested positive, the Inspector General excluded 66 as being infected due to their inpatient stay at the Veterans Affairs Medical Center (Docket No. 18, Def. Statement ¶ 27). Of these patients, 29 had prior Hepatitis B vaccination, 28 were infected prior to insulin pen exposure, seven were indeterminate, and two having false positive (id. at page 7 n.2). None of the 84 patients tested positive for HIV (id. ¶ 28). The positive tests for the remaining 18 patients remains unknown (id. ¶ 29) and the Inspector General could not link any of these patients to misuse of insulin pens (id. ¶ 30). (For obvious privacy reasons, the IG Report did not identify particular patients, thus it is unknown which category plaintiff fell into. Plaintiff does not allege which category among the 84 patients was discussed in the IG Report.) The Inspector General opined that "exposure could have occurred at almost any point in the patients' lives prior to testing" (Docket No. 2, Am. Compl., Ex. D, IG Report at 17; Docket No. 18, Def. Statement ¶ 31). Since patients had other sources for blood borne pathogens besides these pens, the Inspector General concluded that "in none of these cases could an insulin pen exposure be identified as the definite cause of a positive blood test" (Docket No. 2, Am. Compl., Ex. D, IG Report at 17; Docket No. 18, Def. Statement ¶ 32 (emphasis removed)).

On or about December 15, 2012, plaintiff was identified as part of the risk pool associated with insulin pen (Docket No. 18, Def. Statement ¶ 43). In January 2013, plaintiff was notified that he might have been exposed to an insulin pen used on more than one patient,

potentially exposing him to blood borne infection (id. ¶¶ 2, 45-46).  Plaintiff was negative for Hepatitis C or HIV (id. ¶ 47; Docket No. 2, Am. Compl. ¶ 21).  Plaintiff met with Dr. Alan Lesse, the chief of infectious disease at the Veterans Affairs Medical Center, on February 6, 2013, but he denied risk factors for contracting Hepatitis B (Docket No. 18, Def. Statement ¶ 48), such as sex with an infected person, intravenous drug use, or blood transfusions (id. ¶ 49).  Plaintiff had a history of narcotic drug use and could have been exposed to Hepatitis B from that drug use (id. ¶¶ 50-51), although he denied receiving substance abuse treatment or using intravenous drugs (id. ¶ 53).  Plaintiff admits being sexually active with two partners between 2003 and 2013 (id. ¶ 54).  Although plaintiff denies being exposed to anyone with Hepatitis B (id. ¶ 56), he did tell Dr. Lesse in February 2013 that a friend told him that he had some form of Hepatitis (id. ¶ 55).  Plaintiff experienced no symptoms of Hepatitis B and his blood test reveals that plaintiff's exposure to Hepatitis B was not acute (id. ¶¶ 57, 64-66).

The Inspector General conducted an investigation of insulin pen use at the Veterans Affairs Medical Center in 2012-13, publishing its findings in May 2013 (id. ¶ 6; Docket No. 2, Am. Compl. ¶ 23, Ex. D).  In October 2012, the chief of pharmacy at the Veterans Affairs Medical Center discovered that six unlabeled insulin pens were in supply drawers of patient medication carts (Docket No. 18, Def. Statement ¶ 7).  These pens were designed for single patient use and should have been labeled with the specific patient's name (id. ¶ 8).  Following internal investigation, the Inspector General conducted an in-depth investigation (id. ¶¶ 9, 10; see id. ¶¶ 11-32).

Dr. Lesse monitored potentially affected patients (id. ¶¶ 33-34, 61), including plaintiff's (see id. ¶¶ 46, 48, 55, 67).  After reviewing blood work and examining positive test results,

5

Dr. Lesse testified that there was no evidence that the infections were caused by insulin pens (id. ¶ 35; id., Lesse Dep. Tr. at 38). As for plaintiff, Dr. Lesse believes that plaintiff was infected with Hepatitis B sometime between 2003 and 2012 (Docket No. 18, Def. Statement ¶ 67), but did not rule out 100% that plaintiff was not infected while at the Veterans Affairs Medical Center in 2011 or 2012 (id. ¶ 68). Dr. Lesse, however, concludes, "it was highly unlikely that Mr. Maxwell was infected with" Hepatitis B from an insulin pen while at the Veterans Affairs Medical Center (id. ¶ 69), since Dr. Lesse expected more secondary cases of infection if it were the case (id. ¶ 70). No other cases of Hepatitis B infection were found among the patient risk group cohort (id. ¶ 71) but plaintiff was the only patient with a positive Hepatitis B (id. ¶ 72). Of the other veteran patients who had re-used insulin pens, the majority had no symptoms and fought any infection within six months of exposure (id. ¶ 64).

*Defense Summary Judgment Motion (Docket No. 18)*

Defendant argues that plaintiff fails to allege medical malpractice under applicable New York law (Docket No. 18, Def. Memo. at 13-16). Specifically, plaintiff has not shown that the nurses who treated him misused insulin pens (id. at 14-15). The IG Report showed only a minority of the nurses at that time misused the pens. Plaintiff had not shown proof that he was subject to that abuse. (Id.) There was no evidence that plaintiff contracted Hepatitis B from the insulin pens because plaintiff cannot rule out other sources for exposure (such as plaintiff's intravenous drug use or his sexual partners) (id. at 15). If this case goes to trial, defendant argues that plaintiff has not produced expert testimony to support his medical malpractice claim (id. at 16; id., Def. Statement ¶ 79 (plaintiff did not identify experts prior to the discovery cutoff date)). In addition, his treating physician, Dr. Lesse, testified that plaintiff could have contracted

6

Hepatitis B between 2003 and 2013 and from sources other than the mislabeled insulin pens (id. at 15-16). Again, if tried, plaintiff could not eliminate the risk factors for exposure to Hepatitis B, such as sexual contact or intravenous drug use (id. at 16-17).

Defendant next argues that plaintiff implicitly asserts a negligent infliction of emotional distress claim (Docket No. 18, Def. Memo. at 17; cf. Docket No. 2, Am. Compl. ¶¶ 21, 28). Defendant concludes that this claim should fail because, for the negligent infliction claim, plaintiff needed to establish actual exposure to the feared infection and plaintiff does not do that here (Docket No. 18, Def. Memo. at 17-22). Defendant also contends that the Inspector General's report should not be admitted under Federal Rule of Evidence 402 or 403 since it will not assist the fact finder to determine defendant's negligence and the report is more prejudicial than probative of the issues in this case (id. at 22-25).

Plaintiff responds that his negligent infliction of emotional distress claim should survive this motion because, under New York law, actual as well as probable exposure to HIV states a claim (Docket No. 21, Pl. Memo. at first-fifth pages[2]), Montalbano v. Tri-Mac Enterp. of Port Jefferson, Inc., 236 A.D.2d 374, 652 N.Y.S.2d 780 (2d Dep't 1997). He also argues that the IG Report is admissible as it makes findings as to the absence of a plan for monitoring the new insulin pen protocol, the lack of more formal and thorough training on the instrument, and failing to follow through nursing practice procedures (id. at fifth page, quoting, IG Report at 8-9). He does not address defendant's argument to dismiss the medical malpractice claim (see also Docket No. 22, Def. Reply Memo. at 2, 5-6).

---

[2]Cf. W.D.N.Y. Loc. Civ. R. 10(a)(5) (for all pleadings, motions, and other papers "pages must be consecutively numbered").

Defendant replies that plaintiff has not submitted a counterstatement of facts, thus stated facts from defendant should be deemed admitted (id. at 1-2). Defendant contends that plaintiff also fails to establish that he was "probably" exposed to HIV or Hepatitis C (id. at 2-3). Defendant points to the flaw in plaintiff's argument, that this Court should assume that plaintiff had the probable presence of infectious disease because 84 other patients tested positive and defendant shared the same insulin pens among them (id., citing Docket No. 21, Pl. Memo. at second page). Defendant counters that plaintiff's argument ignores Dr. Lesse's uncontested testimony that no patient at the Veterans Affairs Medical Center was infected by an insulin pen (Docket No. 22, Def. Reply Memo. at 3) and plaintiff misstates the IG Report's facts that where the 84 were infected, the Inspector General found that most were infected from other sources (id.). Defendant denies that "special circumstances" should warrant plaintiff's negligent infliction claim due to the destruction of the insulin pens (id. at 3-5).

## DISCUSSION

I. Applicable Standards

    A. Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

These facts are supported by citation to particular parts of materials in the record, Fed. R. Civ. P. 56(c)(1)(A), but such material must "be presented in a form that would be admissible in evidence," id., R. 56(c)(2) (emphasis added); see id. R. 56(c)(4) (affidavit in support or in opposition to motion must be in an admissible form). If a party fails to properly support or address a fact, this Court may give that party the opportunity to support or address the fact; consider the fact undisputed; grant summary judgment shows entitlement to that relief; or issue any other appropriate Order, id. R. 56(e).

Federal Rule of Evidence 402 provides that relevant evidence is admissible "unless any of the following provide otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court," Fed. R. Evid. 402. Rule 403 allows this Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

  B. Federal Tort Claims Act and Substantive Law Standards

As a Federal Tort Claims Act case, the law of the place where the tort occurred (here, New York) applies, 28 U.S.C. § 1346(b)(1); Guttridge v. United States, 927 F.2d 730, 732 (2d Cir. 1991) (Docket No. 18, Def. Memo. at 13). Under New York law, medical malpractice is deviation or departure from accepted medical practice, evidence that the deviation or departure was the proximate cause of injury (id.), Vale v. United States, 673 F. App'x 114, 116 (2d Cir.

10

2016) (summary Order); Stukas v. Strieter, 83 A.D.2d 18, 27-28, 918 N.Y.S.2d 176, 184 (2d Dep't 2011). Plaintiff has to prove sufficient evidence of each element (id.) and unless within the ken of lay jurors, this is usually proven by expert testimony, Vale, supra, 673 F. App'x at 116; Milano by Milano v. Freed, 64 F.3d 91, 95 (2d Cir. 1995).

Plaintiff also claims negligent infliction of emotional distress arising from feared exposure to an infectious disease. In this state, it is an injury from negligently induced mental trauma without physical impact, Tobin v. Grossman, 24 N.Y.2d 609, 613, 301 N.Y.S.2d 554, 556 (1969). (Id. at 17.) As noted by defendant (id. at 17-18), the elements of this tort are a duty owed to plaintiff, a breach of which exposes him or her to unreasonable risk of bodily injury or death, Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016); see Brown v. New York City Health & Hosps. Corp., 225 A.D.2d 36, 44, 648 N.Y.S.2d 880, 885 (2d Dep't 1996) (feared exposure to HIV). In Brown, the plaintiff had not tested seropositive for HIV, for the negligent infliction of emotional distress claim the plaintiff needed to offer proof of "'actual exposure', that is, proof of both a scientifically accepted method of transmission of the virus (in this case a needle puncture) and that the source of the allegedly transmitted blood or fluid was in fact HIV positive," 225 A.D.2d at 45, 648 N.Y.S.2d at 886. That court found proof of actual exposure to "insure that there is a genuine basis for the plaintiff's fear of developing the disease," and that claims are treated consistently, id., 225 A.D.2d at 45, 648 N.Y.S.2d at 886. This standard also avoids claims arising from mere speculative worry, as well as a "flood of ill-justified litigation" from mere fear, id. (quoting Vallery v. Southern Bapt. Hosp., 630 So.2d 861, 867 (La. App. 4th Cir. 1993)).

11

Plaintiff relies upon subsequent cases that require proof of actual or probable exposure to state a negligent infliction claim (Docket No. 21, Pl. Memo. at first to second pages), Montalbano, supra, 236 A.D.2d at 375, 652 N.Y.S.2d at 781.

II.   Statement of Material Facts

Plaintiff did not submit his counterstatement of facts to object to the factual allegations defendant makes in support of this motion.  Plaintiff's responding memorandum merely makes legal arguments without disputing defendant's factual assertions.  Under this Court's Local Civil Rule 56(a)(2), absent contradiction, the facts alleged by defendant in its Statement of Material Facts are deemed admitted, id.

III.   Exposure Liability

Although not expressly alleged as distinct claims in the Amended Complaint (cf. Docket No. 2, Am. Compl. ¶¶ 25-28, claim for negligence), defendant breaks plaintiff's claim into a medical malpractice claim (id. ¶¶ 25-28) and a claim for negligent infliction of emotional distress from the potential exposure to HIV or Hepatitis C (id. ¶ 28 (suffering "mental anguish including anxiety, depression and loss of enjoyment of life"); see id. ¶ 21).

   A.   Medical Malpractice under New York Law

Plaintiff does not contest the facts asserted by defendant and does not argue for his medical malpractice claim.  Although plaintiff's claim is almost entirely a medical malpractice claim, his arguments focus on his negligent infliction of emotional distress component of his claim.  Defendant concludes that plaintiff abandoned the malpractice claim (Docket No. 22, Def. Reply Memo. at 5-6).  Thus, defendant's motion for summary judgment dismissing the medical malpractice claim (Docket No. 18) should be **granted**.

12

B.      Negligent Infliction of Emotional Distress under New York Law

1.      Actual or Probable Exposure (or Both)?

Plaintiff focuses his arguments on the viability of his negligent infliction claim (see Docket No. 21, Pl. Memo. at first-fifth pages; see also Docket No. 2, Am. Compl. ¶¶ 21, 28). First, the parties differ whether plaintiff needed to prove actual exposure (Docket No. 18, Def. Memo. at 20, see Brown, supra, 225 A.D.2d at 45, 648 N.Y.S.2d at 886) or probable exposure as well (Docket No. 21, Pl. Memo. at first to second pages; see Montalbano, supra, 236 A.D.2d at 375, 652 N.Y.S.2d at 781).

Cases mostly from the Appellate Division, Second Department (the court which authored Brown and Montalbano) use the phrase "actual or probable presence of HIV" as the element rather than requiring only actual presence of the disease, e.g., Schott v. St. Charles Hosp., 250 A.D.2d 587, 588, 672 N.Y.S.2d 393, 394 (2d Dep't 1998) (quoting Montalbano, supra, 236 A.D.2d at 375, 652 N.Y.S.2d at 781); Dubler v. S. Nassau Cmtys. Hosp., No. 10162/14, 2017 NYLJ LEXIS 1495, at *3 (Sup. Ct. Nassau County June 13, 2017) (also citing Montalbano, supra); Siegrist v. State of N.Y., 15 Misc.3d 1129(A) (N.Y. Ct. of Claims 2007), aff'd, 55 A.D.3d 717, 868 N.Y.S.2d 670 (2d Dep't 2008) (citing both Brown and Montalbano on element that plaintiff prove she was actually exposed to HIV, 55 A.D.3d at 718, 868 N.Y.S.2d at 671). The courts do not discuss the distinction between actual presence and probable presence. Defendant also notes the inconsistency in which New York courts apply these two terms (Docket No. 22, Def. Reply Memo. at 2 n.2, citing e.g., Siegrist, supra, 55 A.D.3d at 718, 868 N.Y.S.2d at 671; Aberbach v. Biomedical Tissue Servs., Ltd., 48 A.D.3d 716, 718, 854 N.Y.S.2d 143, 145 (2d Dep't 2008) (plaintiff did not allege actual or probable exposure to HIV for negligent

13

infliction claim)).  The standard appears to be actual or probable presence.  Nowhere in the case law is "probable" presence defined.

        2.      Proof of Any Exposure

Accepting either actual or probable exposure, plaintiff bears the burden of proving his exposure.  Here, plaintiff has not submitted a counterstatement of facts, so this Court takes the facts as stated by defendant as admitted by plaintiff.  There is no record of any patient, including plaintiff, being infected from use of the insulin pens (see Docket No. 18, Def. Statement ¶ 21), thus plaintiff fails to prove actual exposure to HIV or Hepatitis C (see Docket No. 2, Am. Compl. ¶ 21).

There remains probable exposure.  Plaintiff claims that he proved probable exposure by relying upon the 84 tested patients who had a positive test and would have this Court "assume for purposes of this Motion that those pens were shared amongst the plaintiff and those patients with the viruses, and therefore, the probable presence of that virus" (Docket No. 21, Pl. Memo. at second page).  Plaintiff does not claim that he is among the 84 patients noted in the IG Report or other facts about his treatment and the treatment of the 84 patients to allow the assumption he seeks.  The admitted facts here, however, show no infection from the misuse of the insulin pens to plaintiff or to other patients.  The only thing alleged is that he and the 84 patients potentially were injected with used insulin pens.

Positive tests of the 84 patients (it is not clear whether this included plaintiff) indicated none of those patients had active HIV or Hepatitis B infections (Docket No. 18, Def. Statement ¶ 28) and 66 of those 88 patients were ruled out for being infected during their stay at the Veterans Affairs Medical Center (id. ¶ 27; Docket No. 2, Am. Compl., Ex. D, IG Report at 16).

Thirty-seven nurses used the insulin pens, and six of them admitted to using unlabeled pens on multiple patients (Docket No. 18, Def. Statement ¶ 19; Docket No. 2, Am. Compl., Ex. D, IG Report at 12).

>Of the 84 patients with a positive test on initial screening:
>
>29 had results from a prior Hepatitis B vaccination;
>28 had prior positive test, that is, before insulin pen exposure;
>7 indeterminate source;
>2 with false positive;
>18 positive for Hepatitis B exposure (Docket No. 2, Am. Compl., Ex. D, IG Report at 16).
>
>Of the 18 patients with positive for Hepatitis B:
>
>12 did not have positive Hepatitis B core and positive Hepatitis B surface antigen tests for active infections (either lacking prior test or had a negative test);
>6 have blood tests consistent with recent or past Hepatitis C exposure, but that exposure could have occurred at any time during their lives (Docket No. 2, Am. Compl., Ex. D, IG Report at 16 & n.25).

The Inspector General interviewed the aforementioned six nurses; five nurses (from the same unit) stated that they used the unlabeled pens as standard, acceptable practice (Docket No. 2, Am. Compl., Ex. D, IG Report at 12). One other nurse found an unlabeled insulin pen in a patient-specific drawer, assumed it was for that patient, and administered it (id.). Four other nurses saw unlabeled pens and disposed of them (id.).

Plaintiff argues that this Court has to assume shared use among the 84 patients and himself based upon defendant's "assumed destruction" of the insulin pens. Plaintiff does not state the basis for either assumption. Plaintiff has not established which nurse or nurses treated him (or the 84 tested patients), much less that these nurses reused insulin pens on him or other patients. He did not testify to which unit he was on during his stays at the Veterans Affairs Medical Center and whether the nurses found by the Inspector General to have admitted to reuse

15

of insulin pens maintained that unit. Plaintiff also did not oppose this motion for summary judgment arguing that additional discovery was necessary to refute this (or other) facts, cf. Fed. R. Civ. P. 56(d). One unit's nurses consistently used unlabeled pens. What is also unknown is the frequency with which these nurses used unlabeled pens or whether other nurses inadvertently used an unlabeled or already used pen. Therefore, on the present record before this Court, plaintiff fails to prove probable exposure to HIV or Hepatitis C from the use of insulin pens to state a negligent infliction of emotional distress claim.

Additionally, plaintiff has not identified an expert witness. This is similar, for example, to what occurred in Montalbano, supra, 236 A.D.2d at 375, 652 N.Y.S.2d at 781-82, where that defendant introduced an AIDS expert who testified on methods of transmission but plaintiff failed to submit any proof in an admissible form to explain the exposure (blood on a french fry) could lead to infection.

### 3. Special Circumstances from Missing Insulin Pens

Plaintiff next argues that special circumstances exist to take this matter outside of the actual or probable exposure requirement because defendant destroyed the insulin pens at issue (Docket No. 21, Pl. Memo. at second page). Defendant vigorously denies that special circumstances exist (Docket No. 22, Def. Reply Memo. at 3-5). First, defendant argues plaintiff has not established that the insulin pens were destroyed; in fact, plaintiff never sought in discovery either the pens themselves or a chain of custody if they were disposed (id. at 4). Next, defendant denies that defendant interfered in plaintiff obtaining proof of the actual presence of HIV to inhibit alleging negligent infliction of emotional distress to warrant special circumstances and a different proof standard (id. at 4-5).

The insulin pens were disposable (see Docket No. 2, Am. Compl., Ex. D, IG Report at 2). The Inspector General questioned pharmacy technicians and some nurses and they stated that when encountering a stray unlabeled insulin pen, they would dispose of it (id. at 11-12). In December 2012, the Veterans Affairs Medical Center decided to discontinue use of insulin pens in favor of individual patient-labeled vials (id. at 17). Thus, it is possible (and more than likely) that the insulin pens used on plaintiff were disposed, but the present record does not state this. Plaintiff is not objecting to entry of judgment here because of a gap in discovery, cf. Fed. R. Civ. P. 56(d). Instead, he argues that this Court assume facts to lead to a conclusion to uphold his claim. This Court recommends that such assumption not be entertained. Without this assumption that plaintiff and the 84 other patients shared insulin pens (now presumably destroyed), no special circumstance exists to find that plaintiff was hindered in proving actual (or even probable) exposure to HIV or Hepatitis C.

Thus, defendant's motion for summary judgment (Docket No. 18) should be **granted**.

IV.   Admissibility of Inspector General's Report

Defendant argues that the Inspector General's report on the handling of insulin pens is more prejudicial than probative and should not be admitted as evidence for this motion for summary judgment (Docket No. 18, Def. Memo. at 22-25). Plaintiff counters that the report is admissible because it is a report generated by the defendant agency, the Department of Veterans Affairs through its Office of Inspector General (Docket No. 21, Pl. Memo. at fifth-sixth pages). For purposes of this motion for summary judgment, this Court need only decide whether evidence in admissible form has been presented in support or in opposition to the motion, see Fed. R. Civ. P. 56(b)(2), (e). While this Court (more properly the District Court upon review of

17

objections to this Report & Recommendation) may issue an Order on the ultimate admissibility of plaintiff's proof, the better course at this stage is to consider defendant's motion with the IG's Report.  As can be seen in the above discussion in this Report & Recommendation, the IG Report has been considered by this Court as a description of the insulin pen misuse, the identification of patients and determining exposure to blood borne pathogens, and remedial actions by the Veterans Affairs Medical Center.

While the IG Report (see Docket No. 2, Ex. D, IG Report at 18; cf. Docket No. 18, Def. Memo. at 23) might support plaintiff's malpractice claim as an indication of defendant's departure from accepted medical practice, as found above plaintiff has abandoned his medical malpractice claim.  As for the remaining negligent infliction claim, that tort does not require adherence to a particular standard; plaintiff need only show that defendant breached the duty owed to him and exposed him to unreasonable risk of injury.  This Report outlines the investigation of the misuse of the insulin pens but concludes that no patients contracted HIV or Hepatitis C from repeated use of these pens (see Docket No. 2, Am. Compl., Ex. D, IG Report at 3; Docket No. 18, Def. Statement ¶ 21).  That Report does not show injury to plaintiff by any misuse.  Defendant's motion, in effect, to deny admission (Docket No. 18, Def. Memo. at 22-25) of the IG Report should be **denied** for purposes of considering defendant's overall motion for summary judgment.  This Court takes no position on the ultimate admissibility of the IG Report (either in its entirety or in part), given the recommended disposition of the greater motion (to grant summary judgment to defendant and dismiss this action).

## CONCLUSION

Based upon the above, it is recommended that defendant's motion for summary judgment (Docket No. 18) be **granted and this action dismissed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
May 3, 2018